THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, § § § | |
| Plaintiff, § § | |
| v. § § | Case No. |
| GONZALES SOUTH TEXAS ELECTRIC CORPORATION d/b/a GONZALES COMMERCIAL ELECTRIC, INC., GONZALES COMMERCIAL ELECTRIC, LLC, GONZALES COMMERCIAL ELECTRIC CENTRAL TEXAS, LLC, GCE SERVICES, LLC d/b/a GCE SERVICES, GCE SERVICES, LLC d/b/a GCE ERVICES PLUMBING DIVISION, GCE SERVICES, LLC d/b/a GCE SERVICES MECHANICAL DIVISION, GCE SERVICES, LLC d/b/a GCE SERVICES ELECTRICAL DIVISION, GONZALES COMMERCIAL ELECTRIC NORTH TEXAS, LLC, R GONZALES ELECTRICAL, LLC d/b/a GONZALES ELECTRICAL, GCE MECHANICAL, LLC, EP INDUSTRIES, LLC, ROBERT J. GONZALES, FREDERICK GONZALES, ST. JOHN GONZALES, ALICE GONZALES, ROBERT GONZALES, JR., CAROLINE GONZALES, AND CHRISTOPHER GONZALES, § § § § § § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR
INDEMNITY, EQUITABLE, AND OTHER RELIEF**

Plaintiff Atlantic Specialty Insurance Company (the "**Surety**" or "**ASIC**") files its Original

Complaint for Indemnity, Equitable, and Other Relief against Gonzales South Texas Electric

---

**PLAINTIFF'S ORIGINAL COMPLAINT FOR
INDEMNITY, EQUITABLE, AND OTHER RELIEF**                                                                Page 1

Corporation d/b/a Gonzales Commercial Electric, Inc., Gonzales Commercial Electric, LLC, Gonzales Commercial Electric Central Texas, LLC, GCE Services, LLC d/b/a GCE Services, GCE Services, LLC d/b/a GCE Services Plumbing Division, GCE Services, LLC d/b/a GCE Services Mechanical Division, GCE Services, LLC d/b/a GCE Services Electrical Division, Gonzales Commercial Electric North Texas, LLC, R Gonzales Electrical, LLC d/b/a Gonzales Electrical, GCE Mechanical, LLC, EP Industries, LLC, Robert J. Gonzales, Frederick Gonzales, St. John Gonzales, Alice Gonzales, Robert Gonzales, Jr., Caroline Gonzales, Christopher Gonzales (collectively, "**Indemnitors**" or "**Defendants**") and shows:

## I.   PARTIES

1. Plaintiff Atlantic Specialty Insurance Company is a Michigan corporation.

2. Gonzales South Texas Electric Corporation d/b/a Gonzales Commercial Electric, Inc. ("**GSTEC**") is a Texas corporation with its principal place of business in Houston, Texas. GSTEC may be served with process by serving its registered agent St. John Gonzales, 5618 Robertson, Houston, Texas 77009.

3. Defendant Gonzales Commercial Electric, LLC ("**GCE**"), is a Texas limited liability company with its principal place of business in Houston, Texas. Michael W. Martin, Robert J. Gonzales, and Robert J. Gonzales, Jr. are members of GCE and are Texas residents. GCE may be served with process by serving its registered agent Robert J. Gonzales, 2520 Farrell Rd., Houston, Texas 77073.

4. Defendant Gonzales Commercial Electric Central Texas, LLC ("**GCECT**"), is a Texas limited liability company with its principal place of business in Houston, Texas. John Gonzales, Robert Gonzales, and Robert Gonzales, Jr. are members of GCECT and are Texas residents. MWM Diversified, Inc., a Texas corporation with its principal place of business in

Houston, Texas, is also a member of GCET. GCECT may be served with process by serving its registered agent Robert Gonzales, 1535 Longhorn Rd., Harwood, Texas 78632.

5. Defendant GCE Services, LLC d/b/a GCE Services ("**GCE Services**"), is a Texas limited liability company with its principal place of business in Houston, Texas. John Gonzales, Robert Gonzales, Robert Gonzales, Jr., Fred Gonzales, and Christopher Gonzales are members of GCE Services and are Texas residents. MWM Diversified, Inc., a Texas corporation with its principal place of business in Houston, Texas, is also a member of GCE Services. GCE Services may be served with process by serving its registered agent Robert Gonzales, Jr., 5225 Milwee, Houston, Texas 77092.

6. Defendant GCE Services, LLC d/b/a GCE Services Plumbing Division ("**GCE Services Plumbing**"), is a Texas limited liability company with its principal place of business in Houston, Texas. John Gonzales, Robert Gonzales, Robert Gonzales, Jr., Fred Gonzales, and Christopher Gonzales are members of GCE Services Plumbing and are Texas residents. MWM Diversified, Inc., a Texas corporation with its principal place of business in Houston, Texas, is also a member of GCE Services Plumbing. GCE Services Plumbing may be served with process by serving its registered agent Robert Gonzales, Jr., 5225 Milwee, Houston, Texas 77092.

7. Defendant GCE Services, LLC d/b/a GCE Services Mechanical Division ("**GCE Services Mechanical**"), is a Texas limited liability company with its principal place of business in Houston, Texas. John Gonzales, Robert Gonzales, Robert Gonzales, Jr., Fred Gonzales, and Christopher Gonzales are members of GCE Services Mechanical and are Texas residents. MWM Diversified, Inc., a Texas corporation with its principal place of business in Houston, Texas, is also a member of GCE Services Mechanical. GCE Services Mechanical may be served with process by serving its registered agent Robert Gonzales, Jr., 5225 Milwee, Houston, Texas 77092.

8. Defendant GCE Services, LLC d/b/a GCE Services Electrical Division ("**GCE Services Electrical**"), is a Texas limited liability company with its principal place of business in Houston, Texas. John Gonzales, Robert Gonzales, Robert Gonzales, Jr., Fred Gonzales, and Christopher Gonzales are members of GCE Services Electrical and are Texas residents. MWM Diversified, Inc., a Texas corporation with its principal place of business in Houston, Texas, is also a member of GCE Services Electrical. GCE Services Electrical may be served with process by serving its registered agent Robert Gonzales, Jr., 5225 Milwee, Houston, Texas 77092.

9. Defendant Gonzales Commercial Electric North Texas, LLC ("**GCENT**"), is a Texas limited liability company with its principal place of business in Houston, Texas. John Gonzales, Robert Gonzales, Robert Gonzales, Jr., and Fred Gonzales are members of GCENT and are Texas residents. MWM Diversified, Inc., a Texas corporation with its principal place of business in Houston, Texas, is also a member of GCENT. GCENT may be served with process by serving its registered agent Robert Gonzales, 5235 Milwee Street, Houston, Texas 77092.

10. Defendant R Gonzales Electrical, LLC d/b/a Gonzales Electrical ("**RGE**"), is a Texas limited liability company with its principal place of business in Houston, Texas. Robert Gonzales and Christopher Gonzales are members of RGE and are Texas residents. MWM Diversified, Inc., a Texas corporation with its principal place of business in Houston, Texas, is also a member of RGE. RGE may be served with process by serving its registered agent Robert Gonzales, 2520 Farrell Rd., Houston, Texas 77073.

11. Defendant GCE Mechanical, LLC ("**GCE Mechanical**"), is a Texas limited liability company with its principal place of business in Houston, Texas. Robert Gonzales and Robert Gonzales, Jr. are members of GCE Mechanical and are Texas residents. GCE Mechanical

may be served with process by serving its registered agent Robert Gonzales, Jr., 5225 Milwee, Houston, Texas 77092.

12. EP Industries, LLC ("**EP Industries**") is a Texas limited liability company with its principal place of business in Houston, Texas. Michael W. Martin is a member of EP Industries and is a Texas resident. MWM Diversified, Inc., a Texas corporation with its principal place of business in Houston, Texas, is also a member of EP Industries. EP Industries may be served with process by serving its registered agent Michael W. Martin, 2022 Candlelight Place Dr., Houston, Texas 77018.

13. Defendant Robert J. Gonzales, an individual, is a citizen and resident of Texas who may be served with process at 22906 Walden Way, Tomball, Texas 77375 or wherever he may be found.

14. Defendant Frederick Gonzales is a citizen and resident of Texas who may be served with process at 1215 Common Park Dr., Houston, Texas 77009 or wherever he may be found.

15. Defendant St. John Gonzales is a citizen and resident of Texas who may be served with process at 1201 Morris St., Houston, Texas 77009 or wherever he may be found.

16. Defendant Alice Gonzales is a citizen and resident of Texas who may be served with process at 1201 Morris St., Houston, Texas 77009 or wherever she may be found.

17. Defendant Robert Gonzales, Jr. is a citizen and resident of Texas who may be served with process at 471 Royal Navigator, Montgomery, Texas 77316 or wherever he may be found.

18. Defendant Caroline Gonzales is a citizen and resident of Texas who may be served with process at 471 Royal Navigator, Montgomery, Texas 77316 or wherever she may be found.

19. Defendant Christopher Gonzales is a citizen and resident of Texas who may be served with process at 22906 Walden Way, Tomball, Texas 77375 or wherever he may be found.

## II.   VENUE

20. This Court possesses original jurisdiction over ASIC's claims under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

21. This Court possesses the power to declare the respective rights and other legal relations of the parties as requested herein under 28 U.S.C. § 2201(a).

22. This Court possesses the power to grant the injunctive relief requested herein under Rule 65 of the Federal Rules of Civil Procedure.

23. Venue is proper in the United States District Court for the Southern District of Texas, Houston Division, under 28 U.S.C. § 124(b)(2) and 28 U.S.C. § 1391(b)(1) because one or more of the Defendants reside in the Southern District of Texas, Houston Division, and all of the Defendants are residents/citizens of the State of Texas.

## III.   FACTUAL BACKGROUND

A.   THE AGREEMENTS OF INDEMNITY

24. The Indemnitors executed General Agreements of Indemnity on or about April 21, 2017[1] and June 17, 2021[2] (collectively, the "**Indemnity Agreements**").

---

[1] General Agreement of Indemnity dated April 21, 2017, attached at **Exhibit A**. This General Agreement of Indemnity was executed by Defendants Gonzales South Texas Electric Corporation, Gonzales South Texas Electric Corporation d/b/a Gonzales Commercial Electric, Inc., EP Industries, LLC, Robert J. Gonzales, Frederick Gonzales, St. John Gonzales, and Alice Gonzales.

[2] General Agreement of Indemnity dated June 17, 2021, attached as **Exhibit B**. This General Agreement of Indemnity was executed by Defendants Gonzales South Texas Electric Corporation d/b/a Gonzales Commercial Electric, Inc., Gonzales Commercial Electric, LLC, Gonzales Commercial Electric Central Texas, LLC, GCE Services, LLC d/b/a GCE Services, GCE Services, LLC d/b/a GCE Services Plumbing Division, GCE Services, LLC d/b/a GCE Services Mechanical Division, GCE Services, LLC d/b/a GCE Services Electrical Division,

25. Pursuant to the Indemnity Agreements, where an Event of Default occurs, Indemnitors agreed to indemnify the Surety and post collateral upon demand:

> [the] Indemnitors agree to pay to Surety upon demand: 1. All loss, costs and expenses of whatsoever kind and nature, including court costs, attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Indemnitors to make arrangements for Surety's legal representation), in-house fees, consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety. . . [and] 2. Any amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Surety, or (b) such amount as the Surety, in its sole judgment, shall deem is sufficient to protect it from loss. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond. . ."[3]

26. With respect to financial information, the Indemnitors agreed to furnish access to their books and records until the Surety has received competent evidence of its discharge from obligations under the Bonds:

> Until Surety shall have been furnished with the competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Indemnitors for the purpose of examining, copying, or reproducing them.[4]

**B.     BONDS ISSUED BY ASIC**

27. As consideration for the Indemnity Agreements, ASIC, as surety, issued construction surety bonds for GCE that included the following performance and payment bonds

---

Gonzales Commercial Electric North Texas, LLC, R Gonzales Electrical, LLC d/b/a Gonzales Electrical, GCE Mechanical, LLC, Robert J. Gonzales, Frederick Gonzales, St. John Gonzales, Alice Gonzales, Robert Gonzales, Jr., Caroline Gonzales, Christopher Gonzales.

[3] Exhibit A, Indemnity to Surety, at ¶ 1 & 2; Exhibit B, Indemnity to Surety, at ¶ 1 & 2.

[4] Exhibit A, General Provisions, at ¶ 4; Exhibit A, General Provisions, at ¶ 4.

(collectively, the "**Bonds**"), for the following obligees (collectively, the "**Obligees**"), on the following projects in Texas and Oklahoma (collectively, the "**Projects**"):

| Bond # | Project/Address | Obligee | Liability Amt. |
|---|---|---|---|
| 800135957 | BURNET CISD (STUDENT ACTIVITY CENTER) | SATTERFIELD & PONTIKES CONSTRUCTION, INC. | $768,797.00 |
| 800132578 | DEL VALLE MIDDLE SCHOOL | BARTLETT COCKE GENERAL CONTRACTORS LLC | $4,681,826.00 |
| 800132523 | TEES BALLISTIC AERO OPTICS MATERIALS FACILITY (BAM) JOB NO. 203163 | BARTLETT COCKE GENERAL CONTRACTORS LLC | $2,197,000.00 |
| 800129113 | ELECTRICAL FOR CFIS - MIDDLE SCHOOL 20 | SATTERFIELD & PONTIKES CONSTRUCTION, INC. | $10,200,000.00 |
| 80075218 | GOOSE CREEK CISD – STERLING HS | BARTLETT COCKE GENEERAL CONTRACTORS LLC | $4,204,199.00 |
| 800135932 | CSCD ATASCOCITA | MANHATTAN CONSTRUCTION COMPANY | $224,787.00 |
| 70190882 | HUMBLE ISD – LAKELAND ES ELECTRICAL | MANHATTAN CONSTRUCTION COMPANY | $3,905,250.00 |
| 70195431 | HUMBLE ISD – LAKELAND ES PLUMBING | MANHATTAN CONSTRUCTION COMPANY | $3,731,000.00 |
| 800125003 | LYNN WYATT SQUARE MECHANICAL | MANHATTAN CONSTRUCTION COMPANY | $256,250.00 |
| 800122369 | LYNN WYATT SQUARE PLUMBING | MANHATTAN CONSTRUCTION COMPANY | $360,800.00 |
| 800132594 | WINSTAR WORLD CASINO – TOWER 1, LEVEL 1 | MANHATTAN CONSTRUCTION COMPANY | $1,317,634.00 |
| 800132592 | WINSTAR WORLD CASINO – GENERATOR BUILDING | MANHATTAN CONSTRUCTION COMPANY | $976,087.00 |
| 800122379 | HERITAGE SENIOR LIVING – PLUMBING | TURNER CONSTRUCTION COMPANY | $1,542,945.00 |
| 70189741 | HOUSTON AIRPORT (IAH) – TERMINAL BAGGAGE RECAP | ARCHER WESTERN CONSTRUCTION, LLC | $1,700,000.00 |
| | | **Total:** | **$36,066,575.00** |

28.     The Surety has received over $20,000,000 in performance bond claims from Obligees on certain Projects that GCE failed to perform and over $2,000,000 in payment bond claims from subcontractors and suppliers of GCE that GCE have failed to pay.

### C.   INDEMNITORS HAVE FAILED AND REFUSED TO INDEMNIFY AND POST COLLATERAL UPON DEMAND

29.     The Surety issued a written demand on the Indemnitors dated December 5, 2022 to provide collateral security of $19,047,623 specific to claims asserted by Obligees on four of the Bonds where those Obligees terminated their contract with GCE; and access to books, records, and accounts of each Indemnitor.[5] Despite written demand, the Indemnitors failed to indemnify and provide the requested collateral and access to books, records, and accounts as required by the Indemnity Agreements.

30.     After issuing the demand to the Indemnitors, the Surety resolved performance claims in the total amount of $14,267,282.20 and payment bond claims in the total amount of $136,525.02. The Surety has remaining exposure under the Bonds in the minimum amount of $3,000,000.

31.     Given the unwillingness of the Indemnitors to commit to posting any collateral with the Surety and given that the Surety is aware of collateral that the Indemnitors could post, the Surety fears that the Indemnitors may deplete assets to a point where there will not be sufficient collateral to protect the Surety and will leave the Surety exposed under the Bonds in the amount of $3,000,000. This amount is the remaining potential liability of the Surety under the Bonds. Without the collateral to secure the Surety from such loss, the Surety will suffer irreparable harm under the Bonds with no recourse for reimbursement from the Indemnitors.

---

[5] December 5, 2022 Letter to Indemnitors, attached as **Exhibit C**.

32. The Surety seeks and is entitled to injunctive relief and specific performance of the Indemnitor's obligation to post collateral under the Indemnity Agreements.

33. The Surety requests that this Court issue a preliminary and permanent injunction compelling the Indemnitors: (a) to post collateral in the amount of $3,000,000 plus additional funds necessary to secure the expenses, court costs, and attorneys' fees expended and/or will be expended as necessary in order to enforce the Indemnity Agreements, and (b) to provide immediate access to their books, records, accounts, databases, and any and all financial records the Surety has a right to access under the Indemnity Agreements (the "**Records**"). Without injunctive relief, the Surety will suffer irreparable harm because of the likelihood of the Indemnitors dissipating assets. The disposition of assets will reduce the amount of collateral available to the Surety and prevent Indemnitors from being able to fulfill their obligations to provide collateral sufficient to protect the Surety from all undischarged liability.

## IV.   CLAIMS FOR RELIEF

### A.   BREACH OF INDEMNITY AGREEMENTS

34. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

35. Indemnitors executed the Indemnity Agreements whereby they agreed to indemnify the Surety against any liability or loss in connection with the Bonds.

36. Indemnitors have failed to make payment or otherwise indemnify the Surety for its losses under the terms of the Indemnity Agreements, which constitutes a breach of the Indemnity Agreements.

37. As a direct and proximate result of Indemnitors' breach of the Indemnity Agreements, the Surety has incurred loss to date of $14,403,807.22 and will continue to incur

losses, costs, and expenses, including attorneys' fees and costs associated with the prosecution of this action.

38. The Surety is entitled to the entry of judgment against Indemnitors in an amount sufficient to fully indemnify and hold the Surety harmless from and against all loss under the terms of the Indemnity Agreements.

A. **COMMON LAW INDEMNITY**

39. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

40. The Surety has been called upon as surety for Indemnitor's alleged defaults under the Bonds.

41. Indemnitors benefitted from the Surety's posting of the Bonds, as Indemnitors could not have performed without the Bonds.

42. Under the theories of common law indemnity, unjust enrichment, and restitution, the Surety is entitled to payment from Indemnitors for all of the Surety's loss and expense resulting from issuance of the Bonds.

B. **SPECIFIC PERFORMANCE OF COLLATERAL OBLIGATIONS OF INDEMNITOR**

43. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

44. Under Indemnity to Surety, Paragraph 2 of the Indemnity Agreements, the Indemnitors are obligated to deposit collateral in an amount the Surety deems sufficient to protect the Surety against exposure from all undischarged liability on the Bonds.

45. Pursuant to Indemnity to Surety, Paragraph 2 of the Indemnity Agreements, the Surety has demanded that the Indemnitors deposit collateral totaling $3,000,000 relative to the undischarged liability of the Surety under the Bonds.

46. Despite the Surety's demand, the Indemnitors have failed and/or refused to deposit any collateral with the Surety. The failure of the Indemnitors to deposit the demanded collateral with the Surety constitutes a breach of the Indemnity Agreements.

47. If the requested relief is not granted, the Indemnitors may sell, transfer, dispose, lien, secure, or otherwise divert asserts, thereby preventing the Surety's access to those assets for discharging the Indemnitors' obligations to indemnify the Surety.

48. The Surety is therefore entitled to the entry of a judgment compelling the Indemnitors to specifically perform their duty to deposit collateral with the Surety in the minimum amount of $3,000,000.

C. **SPECIFIC PERFORMANCE OF DUTY TO FURNISH BOOKS AND RECORDS**

49. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

50. Under General Provisions, Paragraph 4 of the Indemnity Agreements, the Indemnitors, upon demand, are obligated to furnish the Surety free access to the books and records of the Indemnitors.

51. The Surety is therefore entitled to entry of a judgment compelling the Indemnitors to specifically perform their obligation to furnish the Surety free access to their books and records.

D. **EXONERATION**

52. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

53. The Indemnitors are liable to the Surety under the Indemnity Agreements for all amounts necessary to exonerate the Surety from liability existing and/or asserted against it.

E. **COLLATERALIZATION/QUIA TIMET**

54. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

55. The Indemnitors agreed to procure the full and complete discharge of the Surety under the Bonds and/or to provide collateral in an amount of money sufficient to satisfy all undischarged and potential liability under the Bonds and any fees and expenses incurred in order to secure the compliance of the Indemnitors and the enforcement of the Indemnity Agreements.

56. The Indemnitors have refused to honor or perform their obligations under the Indemnity Agreements to provide collateral sufficient to protect the Surety, despite written demand from the Surety.

57. The Surety is entitled to receive collateral security sufficient to discharge any and all potential liability on the Bonds and all fees and expenses incurred in securing compliance with the Indemnity Agreements.

F. **MOTION FOR PRELIMINARY INJUNCTION**

58. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

59. The Surety hereby moves for a Preliminary Injunction (a) ordering the Indemnitors to deposit immediately cash collateral in the amount of $3,000,000 with the Surety and (b) ordering the Indemnitors to provide the Surety immediate access to their books and records the Surety has a right to access under General Provisions, Paragraph 4 of the Indemnity Agreements. The injunctive relief is necessary to preserve the status quo and to prevent significant, imminent, and

irreparable harm to the Surety, as the Surety will suffer such harm if it does receive the protection it has a right to receive under the Indemnity Agreements in the form of cash collateral.

60. The Surety will also suffer immediate and irreparable injury if the Indemnitors are not immediately restrained from destroying and/or hiding the Records, and the Indemnitors have a contractual obligation to provide access to the Records. No harm will occur to the Indemnitors if this Court orders it to abide by their contractual obligation and provide reasonable access to the Surety.

61. The Surety will likely prevail on the merits and has no adequate remedy at law. Injunctive relief will not adversely affect the public interest, and the Surety is willing to post a bond in the amount the Court deems appropriate.

## V. CONDITIONS PRECEDENT

62. All conditions precedent to recovery by the Surety from the Indemnitors have occurred or have been performed.

## VI. RECOVERY OF ATTORNEYS' FEES

63. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

64. The Indemnity Agreements entitle the Surety to recover its attorneys' fees and costs arising from Indemnitors' breach of the Indemnity Agreements. The acts described in this Petition forced the Surety to retain legal counsel pursue recovery for damages caused by Indemnitors' acts and/or omissions. Accordingly, the Surety seeks reimbursement for its reasonable and necessary attorneys' fees and costs.

65. Additionally, and alternatively, the Surety is entitled to recovery of attorneys' fees under Section 38.001 *et. seq.* of the Texas Civil Practice and Remedies Code.

## VII. INTEREST

66. The Surety repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

67. The Surety is also entitled to recover prejudgment interest against Indemnitors at the highest rate allowed by law. Further, if the Surety recovers on this action, it is entitled to post-judgment interest at the highest rate allowed by law, from the date of judgment until such judgment is satisfied.

## VIII. REQUEST FOR RELIEF

For these reasons, Plaintiff Atlantic Specialty Insurance Company respectfully requests that Indemnitors be cited to appear and answer herein; and that the Surety be granted judgment against Indemnitors for the following:

(a) Judgment against the Indemnitors, jointly and severally, in the amount of $14,403,807.22, representing the actual loss incurred by the Surety under the Bonds as of the date of this Complaint;

(b) Judgment compelling the Indemnitors to specifically perform their obligation to deposit collateral with the Surety in the amount of $3,000,000 which is the amount sufficient to protect the Surety against exposure from all undischarged liability on the Bonds;

(c) Judgment compelling the Indemnitors to specifically perform their duty to furnish the Surety free access to their books and records;

(d) Preliminary injunction and permanent injunction for the following relief: (i) that the Indemnitors be required to specifically perform their obligation to deposit cash collateral with the Surety in the amount of $3,000,000; and (ii) that the Indemnitors provide the Surety with immediate access to the Records;

(e) Judgment against the Indemnitors, jointly and severally, for the Surety's reasonable attorneys' fees and expenses incurred by the Surety to protect/pursue its rights and interest under the Bonds and the Indemnity Agreements;

(f) Judgment against Indemnitors, jointly and severally, for all costs of court;

(g) Judgment against Indemnitors, jointly and severally, for prejudgment and post judgment interest at the highest rate allowed by law; and

(h)     For such further relief, both general and specific, as may be deemed appropriate by this Court.

DATED:     March 1, 2023.

Respectfully Submitted,

*/s/ Gregory M. Weinstein*
GREGORY M. WEINSTEIN
State Bar No. 16027020
CHRIS VALENTINE
State Bar No. 24104313
**WEINSTEIN RADCLIFF PIPKIN LLP**
8350 N. Central Expressway, Suite 1550
Dallas, Texas 75206
Telephone:     214.865.6126
Facsimile:     214.865.6140
Email:     gweinstein@weinrad.com
              cvalentine@weinrad.com

**ATTORNEYS FOR PLAINTIFF ATLANTIC SPECIALTY INSURANCE COMPANY**